## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

CHAR STEVENS,                          )
                                       )
                    Plaintiff,         )
                                       )
v.                                     )          Case No. CIV-19-177-TDD
                                       )
BOARD OF COUNTY                        )
COMMISSIONERS OF WAGONER               )
COUNTY, STATE OF OKLAHOMA,             )
                                       )
                    Defendant.         )

## ORDER

Before the Court is a Motion for Summary Judgment [Doc. No. 27], filed by Defendant Board of County Commissioners of Wagoner County, State of Oklahoma ("the Board"). Plaintiff filed a response in opposition [Doc. No. 30], and the Board filed a reply [Doc. No. 34]. The matter is fully briefed and at issue.

## BACKGROUND

Plaintiff, a former Wagoner County employee, filed this lawsuit following the termination of her employment as an executive assistant in the county's Emergency Management ("EM") office. Plaintiff asserts an age discrimination claim against the Board as a result of her termination and based on an alleged disparity between her salary and the salary of younger employees during her employment with Wagoner County. The Board

asserts that it is entitled to summary judgment because Plaintiff's age discrimination claims fail under the *McDonnell Douglas*[1] framework.[2]

## STANDARD OF DECISION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1315 (10th Cir. 2017) (quoting FED. R. CIV. P. 56(a)).  A dispute is genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and it is material "if under the substantive law it is essential to the proper disposition of the claim."  *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (internal quotation marks omitted).  At the summary judgment stage, the Court views the facts and all reasonable inferences in the light most favorable to the nonmoving party.  *Williams v. FedEx Corp. Services*, 849 F.3d 889, 896 (10th Cir. 2017).

"The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  If the movant meets that burden, the nonmovant must "go beyond the pleadings and 'set forth specific facts' that would be

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).

[2] Plaintiff concedes that she has no direct evidence that she was terminated based on her age; thus, it is not necessary for the Court to address the Board's arguments concerning direct evidence.  *See* Pl.'s Resp. [Doc. No. 30 at 18]; Def.'s Mot. [Doc. No. 27 at 8–9].

admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671; *see also* FED. R. CIV. P. 56(c)(1)(A). To accomplish this, the nonmovant must identify facts by reference to the pleadings, depositions, other discovery materials, exhibits, or affidavits. *See Id.* The Court is not limited to the cited materials, but rather may consider other materials in the record. FED. R. CIV. P. 56(c)(3). The Court's inquiry is whether the facts and evidence of record present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Unsupported conclusory allegations are not sufficient to defeat summary judgment. *Matthiesen v. Banc One Mortg. Corp.*, 173 F.3d 1242, 1247 (10th Cir. 1999).

## DISCUSSION

### Statement of Facts[3]

Plaintiff is a 78-year-old female who was employed by the Board from March 24, 2011 to May 15, 2018. At the time of her termination, Plaintiff was seventy-five years old and was working as an executive assistant in the county's Emergency Management ("EM") office, earning $2,500.00 a month.

Plaintiff was originally hired by former Wagoner County Clerk Carolyn Kussler as an administrative assistant. She was sixty-eight years old when she was hired in March 2011. During employment with the county clerk, Plaintiff received one verbal and three

---

[3] This statement includes material facts presented by both parties that are supported as required by FED. R. CIV. P. 56(c)(1). If a party has asserted a fact, or asserted that a fact is disputed, but has failed to provide necessary support, the assertion is disregarded. All facts are stated in the light most favorable to Plaintiff.

written reprimands.  On July 15, 2015, Plaintiff received a verbal reprimand from Wagoner County Clerk Lori Hendricks concerning Plaintiff's alleged failure to send a copy of the minutes from the Excise and Equalization Board meetings to Human Resources.  Plaintiff received a written reprimand on July 15, 2015, for allegedly utilizing her accrued vacation and sick leave—rather than her paid days off—during the pay period ending June 15, 2015, in violation of personnel policy.[4]  The July 15 written reprimand stated that additional insubordinate activity would result in further disciplinary action up to and including termination.  An August 11, 2015 written reprimand cited Plaintiff's alleged ongoing refusal to use new templates for the meeting agenda and minutes, resulting in formatting issues and duplicate items.

Plaintiff received a third written reprimand on January 26, 2017.[5]  Plaintiff—who refused to sign the record of disciplinary action—was cited with allegedly failing to post a notice of a special board meeting, and the meeting had to be canceled.  Plaintiff asserts that she relied on Ms. Hendricks' notes to complete the meeting minutes and prepare the agendas, and that there was no reference in Ms. Hendricks' notes to a special meeting.  The reprimand also included a notation that Plaintiff had violated the county clerk's confidentiality policy when she informed Wagoner County Engineer Monty Proctor and

---

[4] Absent permission from the county clerk, personnel policy required employees to exhaust leave in the following order:  (1) compensatory time; (2) paid days off; (3) vacation or sick leave.

[5] The record of disciplinary action indicates it is the fourth written disciplinary action for Plaintiff; however, the evidence of record reflects only three written reprimands and one verbal reprimand.

Chasity Levi, Proctor's secretary, that the Board was planning to meet in executive session on January 30, 2017, to discuss the Planning and Zoning Department and Mr. Proctor. Plaintiff asserts that the executive session was posted publicly on the Board's agenda, and that she did not act in violation of the Oklahoma Open Meeting Act or county clerk policy. This alleged violation was added to Plaintiff's disciplinary record after her departure.

At the Board's February 6, 2017 meeting, Wagoner County District Three Commissioner Tim Kelley made a motion to hire Plaintiff as an executive assistant, dividing her time between EM and District Three, effective February 7, 2017. The motion was approved by the Board. According to Plaintiff's deposition testimony and the Board, Commissioner Kelley and Ms. Hendricks transferred Plaintiff to EM, effective February 7, 2017, in lieu of termination. Plaintiff's notice of employee termination includes a notation that Plaintiff "is to be transferred effective 2-7-17." [Doc. No. 30-3]. Likewise, an employee status change form evidences a transfer, effective February 7, 2017. [Doc. No. 30-7 at 6].

In February 2017, prior to Plaintiff being hired, EM did not have an administrative assistant. Shoni Johnson, an administrative employee for District Three, did the administrative work for EM, and had done so for quite some time.

It is undisputed that Plaintiff primarily worked for EM, occasionally filling in for District Three administrative personnel. Plaintiff's immediate supervisor was Heath Underwood; however, Commissioner Kelley had final decision-making authority.

Both parties have attached supporting documents which indicate Plaintiff's monthly salary of $2,500.00 was to be paid by the two departments equally, with District Three

covering the even months and EM covering the odd months.  [Doc. Nos. 27-10, 30-7].

Absent from the parties' submissions, however, is evidence demonstrating from which

specific fund Plaintiff's salary was paid.   Commissioner Kelley testified in his deposition

that funding for District Three personnel derives from the county's state highway funds,

but that he believed Plaintiff was paid from the commissioner use tax.  He indicated he

would have to consult with Human Resources for verification.

On October 4, 2017, Gail Stunkard, another Wagoner County employee, submitted

a complaint alleging that Plaintiff sent her duplicate purchase orders, called another county

employee "an ass," and caused her stress.  [Doc. No. 27-8].

Plaintiff was terminated on May 15, 2018 by Commissioner Kelley without notice.

At that time, he did not give Plaintiff a reason for the termination.  Although Commissioner

Kelley indicated that Plaintiff stayed busy in her EM position, Kelley said he was not

receiving enough benefit from the amount of work Plaintiff performed for District Three

to justify the cost of her salary.  He stated that he did not need Plaintiff's services.  In the

Board's position statement to the Equal Employment Opportunity Commission, the Board

stated through counsel that "Plaintiff was terminated due to a lack of funding to continue

keeping her in her position as an executive assistant to the [EM] Office with the County.

Her position has not been replaced and no one currently holds that title."  [Doc. No. 30-7

at 1].

Plaintiff's position with the county clerk had a salary cap of $2,500.00.  Plaintiff received raises during her tenure with the county clerk's office.[6]  Plaintiff was earning $2,475.00 per month when she was transferred to EM.  Upon her transfer, she received a raise of $25.00 per month.  Plaintiff was earning $2,500.00 per month when she was terminated.

No job description was created for Plaintiff's position, nor was her position filled by anyone after her termination.  Rather, Ms. Johnson, who had previously performed the duties of the position, assumed Plaintiff's responsibilities.  Ms. Johnson was fifty-seven years old at the time of Plaintiff's termination.  Tracy Rector, the other District Three administrative employee, was fifty-five at the time of Plaintiff's termination.  Ms. Rector was a part-time employee.  Commissioner Kelley testified that he did not consider terminating Ms. Rector because she did not cost the county as much money as Plaintiff.

Between May 2018 and May 2019, the Board hired sixty-five employees—seven of whom were over age sixty.  On the date Plaintiff was terminated, the Board employed twenty-four other employees over the age of sixty—three of whom were seventy or older.

In May 2018, the Board terminated four employees (average age fifty-eight), including Plaintiff.  In June 2018, the Board terminated six employees with an average age of thirty-six.  Between May 2018 and July 2018, the Board hired thirteen employees with

---

[6] Plaintiff received a $25.00 per month raise in the fourth quarter of 2011; a $100.00 per month raise in the third quarter of 2012; a $50.00 per month raise in the third quarter of 2014; and a $25.00 per month raise in the first quarter of 2017.

an average age of thirty-nine—one of whom was over age seventy. The majority of those employees were hired as highway road crew members or sheriff's detention officers.

**Analysis**

The *McDonnell Douglas* three-step analysis applies to age discrimination claims under the Age Discrimination in Employment Act ("ADEA"). *See Jones v. Oklahoma City Pub. Schools*, 617 F.3d 1273, 1278 (10th Cir. 2010). Under this framework, Plaintiff bears the initial burden of establishing a prima facie case of discrimination. *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311 (1996). To prove a prima facie case of age discrimination in a termination case, Plaintiff must show that she was: "'(1) within the protected class of individuals 40 or older; (2) performing satisfactory work; (3) terminated from employment; and (4) replaced by a younger person, although not necessarily one less than 40 years of age.'" *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1056 (10th Cir. 2020) (quoting *Adamson v. Multi Cmty. Diversified Services, Inc.*, 514 F.3d 1136, 1146 (10th Cir. 2008)).

Establishing a prima face case "in effect creates a presumption that the employer unlawfully discriminated against the employee." *Maxey v. Rest. Concepts II, LLC*, 654 F. Supp. 2d 1284, 1293 (D. Colo. 2009) (internal quotation marks and citation omitted). Although "the burden of establishing a prima facie case is not high, it is real, and must be sufficient to warrant the presumption of liability in plaintiff's favor." *Id.*

If Plaintiff presents sufficient evidence of a prima facie case, the burden shifts to the Board "to articulate a legitimate, non-discriminatory reason" for terminating Plaintiff's employment. *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1114 (10th Cir. 2007). If it

8

does, then the burden of proof shifts back to Plaintiff, who must show that the proffered justification for the Board's actions is a mere pretext for unlawful employment discrimination. *McDonnell Douglas*, 411 U.S. at 804. "[A]t the summary judgment stage, the parties bear burdens of production rather than burdens of persuasion." *Riggs*, 497 F.3d at 1115.

Here, the Board concedes that Plaintiff belongs to a protected class, that she suffered an adverse employment action, and that she was performing satisfactory work. The Board asserts, however, that there is no evidence to support an inference that Plaintiff's termination was in any way because of her age. Additionally, the Board asserts that Plaintiff was not replaced by a younger person.

## I.    Plaintiff has not presented sufficient evidence of a prima face case of age discrimination.

The undisputed facts establish that Plaintiff was not replaced by a younger person. Her position was eliminated because Commissioner Kelley was not receiving enough benefit from the work Plaintiff performed for District Three to justify the cost of her salary. He did not need Plaintiff's services. No one filled her position after her termination. Rather, Ms. Johnson—an administrative employee for District Three who did the administrative work for EM prior to the creation of Plaintiff's position—re-assumed Plaintiff's responsibilities.

The Board is correct that this is not a typical reduction in force ("RIF") case where an employer is downsizing and sets up a system for deciding which employees to keep and which to let go. However, the Tenth Circuit has noted that the fourth element of the

*McDonnell Douglas* prima facie test "is a flexible one that can be satisfied differently in different scenarios." *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1166 n.8 (10th Cir. 2007). Thus, the modified fourth element in RIF cases could be applicable where an employer downsizes by eliminating a position that it decides is no longer needed.

Nevertheless, Plaintiff has not produced any evidence from which a factfinder might reasonably conclude that Plaintiff was treated less favorably than younger employees in similar positions. *See Ingels v. Thiokol Corp.*, 42 F.3d 616, 621 (10th Cir. 1994). Although Ms. Johnson and Ms. Rector are younger than Plaintiff, they are not similarly situated to Plaintiff. Ms. Johnson and Ms. Rector were administrative employees in the District Three office. Ms. Rector was a part-time employee, while Plaintiff was a full-time employee. Moreover, their positions were funded differently. Half of Plaintiff's salary was paid by District Three, and half was paid by EM. In summary, District Three was contributing to the salary of an employee who did very little work for District Three, and Commissioner Kelley did not need Plaintiff's services. Commissioner Kelley testified that he did not consider terminating Ms. Rector because she did not cost the county as much money as Plaintiff.

Nor has Plaintiff shown how any inference of age discrimination arises from her termination. Plaintiff was sixty-eight years old when she was hired by the county. In early 2017, when she was selected for the EM position, she was seventy-four. In the year following Plaintiff's termination, the Board hired sixty-five employees—seven of whom were over age sixty. On the date Plaintiff was terminated, the Board employed twenty-

four other employees over the age of sixty—three of whom were seventy or older.  In June 2018, the Board terminated six employees with an average age of thirty-six.

Simply put, District Three was deriving very little benefit from Plaintiff's work, but was paying half her salary.  Commissioner Kelley did not need her services, and her position was eliminated.

## II.    The Board has presented a legitimate, non-discriminatory reason for terminating Plaintiff's employment.

Moreover, even if Plaintiff had made her prima facie showing, the Board has satisfied its burden of presenting a justifiable, non-discriminatory reason for Plaintiff's termination.  The Board contends, and the evidence reflects, that the proffered reason for Plaintiff's termination was budgetary in nature—District Three was deriving very little benefit from Plaintiff's employment, but was paying half her salary.  Commissioner Kelley did not need Plaintiff's services.

An employer's burden of articulating a justifiable, non-discriminatory reason for its employment action is "exceedingly light."  *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1173 (10th Cir. 2007).  The employer's burden is one of production only. *Lewis v. D.R. Horton, Inc.*, 375 F. App'x 818, 825 (10th Cir. March 24, 2010) (unpublished)[7] (citing *Mickelson v. New York Life Ins. Co.*, 460 F.3d 1304, 1311 (10th Cir. 2006)).

EM had operated without an administrative assistant prior to the creation of Plaintiff's position in early 2017.  Ms. Johnson had performed the administrative duties for

---

[7] All unpublished opinions are cited pursuant to FED. R. APP. P. 32.1(a) and 10th CIR. R. 32.1.

EM as part of her regular job for District Three.  After Plaintiff's termination and elimination of her position, Ms. Johnson re-assumed those job duties.  Other courts have accepted that an employer's "business decision" to terminate a plaintiff's employment because it was eliminating the position is a legitimate, non-discriminatory reason for termination.  *See, e.g., Creason v. Seaboard Corp.*, 263 F. Supp. 2d 1297, 1307–08 (D. Kan. 2003) (citing *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1261 (10th Cir. 2001) (courts should not "second guess" an employer's business judgment)).  The Court concludes that the evidence cited by the Board is more than sufficient to satisfy its burden of articulating a justifiable, non-discriminatory reason for Plaintiff's termination.

### III.   Commissioner Kelley's decision to terminate Plaintiff's employment was not pretextual.

Accordingly, the burden shifts to Plaintiff to show that the proffered reason is a mere pretext for discrimination; to avoid summary judgment at this stage, Plaintiff must present sufficient evidence to create a genuine factual dispute regarding pretext.  To do so, Plaintiff must present evidence showing that the Board's reasons for termination are so "incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude the reasons were unworthy of belief."  *Young v. Dillon Cos.*, 468 F.3d 1243, 1249 (10th Cir. 2006).

Plaintiff asserts that no budgetary concerns existed when she was terminated; that no other employees were terminated due to budgetary concerns; and that sixty-five employees were hired in the year following Plaintiff's termination.  Although the Board hired sixty-five employees (seven of whom were over age sixty) between May 2018 and

May 2019, most of the newly hired individuals were hired as highway road crew members or sheriff's detention officers; they were not hired into Plaintiff's position or a position comparable with Plaintiff's. This does not indicate that the Board's reasons for terminating Plaintiff and eliminating her position are pretextual.

Further, on the date Plaintiff was terminated, the Board employed twenty-four other employees over the age of sixty—three of whom were seventy or older. Eighteen of the sixty-five employees hired in the year following Plaintiff's termination were terminated themselves that same year. The reasons for their terminations are not listed. Plaintiff has not produced any evidence to support her assertion that no other employee was terminated due to budgetary concerns in 2018 or 2019. Further, sixteen of those employees were under age forty at the time of their termination.

Additionally, Plaintiff asserts that there was no budget shortfall at the time of her termination. However, Plaintiff has not presented sufficient evidence to create a genuine factual dispute regarding funding. Commissioner Kelley testified in his deposition that funding for District Three personnel derives from the county's state highway funds, but that he believed Plaintiff was paid from the commissioner use tax. Plaintiff has not put forth any evidence to dispute that she was paid from the commissioner use tax or that the commissioner use tax was unstable and inconsistent from year to year. Certainly, expending financial resources to pay an employee to do a job that turns out to be unnecessary is a budgetary concern. In summary, there is no evidence of record that the Board's decision to terminate Plaintiff's employment was a pretext for age discrimination.

IV.     **The undisputed facts do not support a compensation claim under the ADEA.**

Additionally, Plaintiff asserts an age discrimination claim against the Board based on an alleged disparity between her salary and the salary of younger employees during her employment with Wagoner County.  Plaintiff asserts that between 2011 and 2016, the employees in the county clerk's office averaged salary increases of 13.46%, but that Plaintiff's salary increases during that time averaged only 4.9%.

To support this assertion, Plaintiff attached a chart, along with several pages of listed employees and their reported salaries for the years 2012 through 2016.  [Doc. No. 30-10]. The chart, which is incomplete and unauthenticated, calculates an average salary increase of 13.46% for the listed employees.  However, data for three of the listed employees is not included.   Further, not included in the exhibit or Plaintiff's response brief is any information about the listed employees' job descriptions, titles, positions, length of employment, or performance evaluations.[8]  Age information is also missing for some of the employees listed.  The Court does not find this exhibit persuasive; the Court cannot determine from this exhibit whether the listed employees are similarly situated to Plaintiff.

The Court further finds that Plaintiff has failed to establish evidence supporting a prima facie case of disparate impact; she has presented no evidence that other similarly situated employees were treated differently or that the decisions regarding her pay

---

[8] The Court would note that one listed employee, Amanda Alsip, who reportedly had a salary increase of 25.9% from 2011 to 2016, was the county clerk's first deputy.  Thus, Ms. Alsip was employed in a supervisory role.  Plaintiff, on the other hand, was not a supervisor.

increases were based on a discriminatory motive. *See, e.g., Lucero v. Sandia Corp.*, 495 F. App'x 903, 909–10 (10th Cir. Aug. 28, 2012) (concluding that the plaintiff had failed to provide any evidence that the other employees were similarly situated where the plaintiff provided no evidence regarding the training, education, or skills of the employees who received higher raises); *Pippin v. Burlington Res. Oil and Gas Co.*, 440 F.3d 1186 (10th Cir. 2006) (absent evidence of the "comparables," including the age of the other employees, the plaintiff failed to establish a prima facie case of disparate impact).

Plaintiff's position with the county clerk had a salary cap of $2,500.00 per month; Plaintiff was earning $2,500.00 per month when she was terminated.  Plaintiff also received raises during her tenure with the county clerk's office, despite being issued one verbal and three written reprimands. Upon her transfer to EM, she received a raise of $25.00 per month, which placed her at the $2,500.00 per month salary cap.  In summary, because Plaintiff has failed to provide any evidence that she was treated differently from any similarly situated employees, who were not in a protected class based on age, she has failed to make out a prima facie case of age discrimination based on compensation.

## CONCLUSION

Based on the foregoing, the Court finds that Defendant Board of County Commissioners of Wagoner County, State of Oklahoma, is entitled to summary judgment on Plaintiff's claims and **GRANTS** the Board's Motion for Summary Judgment [Doc. No. 27].  A separate judgment will be issued accordingly.

**IT IS SO ORDERED** this 19th day of January, 2021.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE